Mary Anne Q. Wood, Utah Bar No. 3539
WOOD BALMFORTH LLC
60 East South Temple, Suite 500
Salt Lake City, Utah 84111
Telephone: (801) 366-6060
Fax: (801) 366-6061
Email: mawood@woodbalmforth.com

Tamara A. Seelman, Colorado Bar No. 29391
GORDON REES SCULLY MANSUKHANI LLP
555 Seventeenth Street, Suite 3400
Denver, Colorado 80202
Telephone: (303) 534-5160
Fax: (303) 534-5161
Email: tseelman@grsm.com
*Pro Hac Vice* Application Pending

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ALLEGIS INVESTMENT SERVICES, LLC; ALLEGIS INVESTMENT ADVISORS, LLC; and BRANDON C. STIMPSON,<br><br>        Plaintiffs,<br><br>        v.<br><br>MARK WATSON,<br><br>        Defendant. | **MOTION TO VACATE OR MODIFY ARBITRATION AWARD**<br><br>Civil Case No.: 2:18-cv-00283<br><br>Judge: Jill N. Parrish |

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND .............................................................................................. 2

FINRA'S LIMITED JURISDICTION .............................................................................. 5

STANDARD OF REVIEW ................................................................................................ 8

ARGUMENT ...................................................................................................................... 9

    I.    THE FINRA PANEL EXCEEDED ITS AUTHORITY. ...................................... 9

        A.  The FINRA Panel Exceeded its Authority by Failing to Dismiss Claims Subject to AAA Arbitration Agreements.......................................................................... 9

        B.  The FINRA Panel Exceeded its Authority by Exercising Jurisdiction over a Non-FINRA Member and its Representative........................................................ 10

        C.  The FINRA Panel Exceeded its Authority by Making a Legal Finding it Did Not Have Authority to Make and Was Not Asked to Make. ............................... 10

        D.  The FINRA Panel Exceeded its Authority by Entering an Award Against Allegis Services and its Associated Person When Watson was Not Their Customer and Watson's Dispute Did Not Involve Them. ................................................. 11

    II.   THE FINRA PANEL'S AWARD IS "IRRATIONAL."................................... 12

    III.  THE FINRA PANEL MANIFESTLY DISREGARDED THE LAW BY FAILING TO FOLLOW FINRA RULES 12200 and 12201 AND *CITIGROUP V. ABBAR.* ............... 13

    IV.  THE FINRA PANEL VIOLATED PUBLIC POLICY BY IGNORING VALID ARBITRATION AGREEMENTS AND EXERCISING JURISDICTION WHEN IT HAD NONE........................................................................................................ 14

    V.   THE FINRA PANEL IMPROPERLY MADE AN AWARD ON A MATTER NOT SUBMITTED TO IT BY FINDING ALLEGIS ADVISORS AND ALLEGIS SERVICES ARE "CONFLATED." ................................................................... 15

CONCLUSION.................................................................................................................. 15

Plaintiffs Allegis Investment Services, LLC ("Allegis Services"), Allegis Investment Advisors, LLC ("Allegis Advisors"), and Brandon C. Stimpson (collectively "Plaintiffs")[1], submit this Motion to Vacate or Modify the Arbitration Award entered in the Financial Industry Regulatory Authority ("FINRA"), Case No. 16-03643.

## INTRODUCTION

FINRA is a non-profit entity that acts as a self-regulatory organization under the Securities Exchange Act of 1934.  FINRA regulates all broker dealers in the United States. Broker dealers engage in the buying and selling of securities for customers through agents known as registered representatives. Broker dealers and their registered representatives receive compensation in the form of commissions. In contrast, registered investment advisors provide clients with investment advice in exchange for a management fee.  Registered investment advisors and their representatives are registered with and regulated by the states in which they do business and the United States Securities and Exchange Commission ("SEC").

Under FINRA's Code of Arbitration Procedure ("FINRA Code"), broker dealers are required to arbitrate disputes with customers before a FINRA panel of arbitrators and pursuant to the FINRA Code. Because registered investment advisors are not regulated by FINRA, they are not subject to FINRA's Code and are not required to arbitrate before a FINRA panel, unless they explicitly and voluntarily agree to do so by signing a "special written submission agreement."

---

[1]     Plaintiffs are correctly denoted as "Petitioners" in this Motion to Vacate.  However, because they were "Respondents" in the arbitration, Plaintiffs are concerned that confusion will result from referring to themselves as "Petitioners" here and "Respondents" below.  They believe the terminology "Plaintiffs" and "Defendants" will make the respective placement of the parties easier to follow.

1

In this case, Defendant Mark Watson was a client of registered investment advisor Allegis Advisors and agreed to arbitrate disputes arising out of Allegis Advisors' services before the American Arbitration Association ("AAA"). Watson's broker dealer was TD Ameritrade. When a dispute arose between Watson and his investment advisor, Watson brought claims against Allegis Advisors in FINRA, not in the AAA as he was contractually required to do. Watson's relevant brokerage account that was managed by Allegis Advisors was located at TD Ameritrade, but Watson named broker dealer Allegis *Services,* which is a FINRA member but was not involved with Watson's TD Ameritrade account or the trade at issue.

Watson's claims in FINRA resulted in the FINRA arbitration panel improperly entering an award against a non-FINRA member and advisor. Because the advisor never agreed to submit to FINRA arbitration, the award must be vacated. The case instead should have been arbitrated before the AAA.

## FACTUAL BACKGROUND

In 2013, Mark Watson met with Stimpson, an investment advisor representative with Allegis Investment Advisors, LLC, and they discussed an options trading strategy whereby Allegis Advisors would trade options in Watson's TD Ameritrade account. Watson signed a Discretionary Advisory Contract with Allegis Advisors granting Allegis Advisors discretion to make options trades in his TD Ameritrade account and agreeing to arbitrate any disputes pertaining to the services of Allegis Advisors with the AAA. *See* **Ex. A** at 3, ¶15.

Watson did not adopt the option trading strategy at that time but Stimpson and Watson stayed in contact.  In 2015, Watson chose to adopt the strategy. Watson then signed four additional agreements with Allegis Advisors, including another Discretionary Advisory

Agreement. *See* **Ex. B,** at 3, ¶15. Under the Discretionary Advisory Agreement Watson, again, granted discretion to Allegis Advisors to trade options in his TD Ameritrade account, and he, again, agreed to arbitrate disputes with Allegis Advisors before the AAA. *See* **Ex. B,** at 3, ¶15**.** Watson also signed two agreements with TD Ameritrade: a Limited Power of Attorney which authorized Allegis Advisors to make options trades in his TD Ameritrade account (**Ex. C**), and a Client Options Account Agreement, which opened an account specifically for options trading with TD Ameritrade as broker dealer. *See* **Ex. D**.[2]

TD Ameritrade sent Watson monthly account statements and notices confirming trades. These statements identify Allegis Advisors as the investment advisor. (*See* August 2015 account statement*,* **Ex. F**, and confirmation notices for trades at issue, **Ex. G**). Watson received profits from the options strategy for several months until August 21, 2015 when the market experienced a flash crash, and Watson suffered losses on an options trade in his TD Ameritrade account.

In December 2016, Watson filed a Statement of Claims in FINRA against Allegis Advisors, Allegis Services, and Stimpson for the losses incurred in August 2015. *See* **Ex. H** (exhibits excluded). Allegis Advisors, which is not a member of FINRA¸ did not sign a submission agreement and therefore did not submit to arbitration before FINRA and was *not* a party to the case. Allegis *Services*, which did not offer or manage the strategy at issue or place or execute the trade at issue, was required to sign a submission agreement because it is a FINRA member. *See* **Ex. I**. Stimpson signed and submitted a submission agreement but noted below his

---

[2]    TD Ameritrade sent Watson a letter confirming information in the Client Options Account Agreement. *See* **Ex. E** at WATSON 2285-2288.

signature he only signed as a registered representative of Allegis *Services* and not as an investment advisor representative of Allegis Advisors.  *See* **Ex. J**.[3]

Allegis Services and Stimpson, in his capacity as a registered representative of Allegis Services, as the only respondents who submitted to FINRA arbitration ("Respondents"), filed an Answer.  *See* **Ex. K** (exhibits excluded). The Answer repeatedly asserted FINRA lacked jurisdiction because the dispute related to the services of a non-FINRA member (Allegis Advisors) and its representative (Stimpson, in his capacity as an investment advisor representative of Allegis Advisors).  Further, the arbitration was inconsistent with the two agreements, between Watson and Allegis Advisors, to arbitrate before the AAA.

While Watson's case was pending, another FINRA Panel, in an identical case involving a different investor, entered an award finding FINRA lacked jurisdiction and dismissed the case. *See* **Ex. L**. That FINRA Panel stated:

> The Panel finds that FINRA lacks jurisdiction of this dispute pursuant to Rules 12200 and 12201 because Claimants were not Customers of FINRA member Respondent Allegis Investment Services LLC, and the individual Respondents Heath Shayne Bowen and Brandon Curt Stimpson were not acting in their capacity as associated persons of a member.

*See* **Ex. L** at 3. Respondents presented this award to the Panel in two motions to dismiss and closing argument.  *See* **Ex. M** at 2, 4; **Ex. N**, Arb. Tr. 536:16-543:23; and 825:1-847:25.

Respondents filed their first motion to dismiss under FINRA Rule 12504(a)(6)(B)[4] and argued FINRA lacked jurisdiction. *See* **Ex. M**. The FINRA Panel denied it without explanation

---

[3]     For the remainder of this motion, all references to Stimpson are in his capacity as a registered representative of Allegis Services, not as an investment advisor representative of Allegis Advisors.

[4]     A motion under Rule 12504(a)(6) is strongly discouraged and can only be granted under one of three specific and narrow criteria.

*See* **Ex. O**. The FINRA arbitration hearing then took place February 19-23, 2018.  During the

arbitration hearing, Respondents verbally made their second motion to dismiss under FINRA

Rule 12504(b)[5] and again argued FINRA lacked jurisdiction.  *See* **Ex. N**, Arb. Tr. 536:16-

543:23. The FINRA Panel denied the motion, again, without explanation. *See* **Ex N**, Arb. Tr.

570:6-10. During closing arguments, Respondents requested the Panel deny Watson's claims, in

part, because FINRA lacks jurisdiction.  *See* **Ex. N**, Arb. Tr. 825:1-847:25. On March 6, 2018

the FINRA Panel issued an arbitration award ("Award") against Allegis Services, Allegis

Advisors, and Stimpson, joint and severally, with the following explanation:

> Allegis Advisors did not file with FINRA Office of Dispute Resolution a properly executed
> Submission Agreement. However, the Panel found that as Allegis Advisors answered
> the Statement of Claim, it is bound by the determination of the Panel on all issues
> submitted. The Panel found that the business activities and identities of Allegis Advisors
> and Allegis Services were conflated with respect to Claimant such that the Panel's
> determinations apply to Allegis Advisors as well as Allegis Services.
>
> On February 2, 2018, the Panel heard oral arguments on Allegis Services and
> Stimpson's Motion to Dismiss pursuant to Rule 12504 of the Code of Arbitration
> Procedure ("Code"). On the same day, the Panel denied Allegis Services and
> Stimpson's Motion to Dismiss. The Motion was renewed during the evidentiary hearing
> on February 21, 2018 and denied by the Panel.

*See* **Ex. P**.

## FINRA'S LIMITED JURISDICTION

Respondents presented the FINRA Panel the following law relating to FINRA's scope of

jurisdiction in their Answer, written motion to dismiss, verbal motion to dismiss, and closing

argument. *See* **Ex. K** at 2, 4; **Ex. M,** and **Ex. N** Arb. Tr. 536:16-543:23; 825:1-847:25.

---

[5]     A motion under Rule 12504(b) is not limited and can be granted under any theory of law.
FINRA, *Regulatory Notice 09-07 Motions to Dismiss and Eligibility Rules*, at 7
http://www.finra.org/industry/notices/09-07 (last visited April 4, 2018). *See* **Ex. T**.

FINRA does not regulate registered investment advisors and their representatives.[6] Investment advisors can only submit disputes to FINRA's dispute resolution forum on a voluntary basis under three conditions: (1) the registered investment advisor signs a post dispute agreement to arbitrate, (2) the registered investment advisor agrees to pay FINRA's fees, and (3) all parties sign a "special written submission agreement," a specific form provided by FINRA.[7]

Outside of these special requirements for registered investment advisors to voluntarily submit to FINRA jurisdiction, FINRA limits its dispute resolution forum to "customers" of FINRA members whose dispute arises in connection with the business activities of a FINRA member or associated person of a member.[8] FINRA Rule 12200 provides parties *must* arbitrate under the FINRA Code if:

- Arbitration under the Code is either:
  (1) Required by a written agreement, or
  (2) Requested by the <u>customer</u>; and
- The dispute is between a <u>customer</u> and a member or associated person of a member; <u>and</u>
- <u>The dispute arises in connection with the business activities of the member or the associated person</u>, except disputes involving the insurance business activities of a member that is also an insurance company.

---

[6]     FINRA, *Investment Advisers*, http://www.finra.org/investors/investment-advisers (last visited Mar. 28, 2018). *See* **Ex. Q**.

[7]     *See* FINRA, *Guidance on Disputes between Investors and Investment Advisers that are not FINRA Members*, https://www.finra.org/arbitration-and-mediation/investment_advisers (last visited Mar. 28, 2018). *See* **Ex. R**; *see also* FINRA, *FINRA ARBITRATION Submission Agreement*, https://www.finra.org/sites/default/files/FINRA_Arbitration_Submission_Agreement.pdf (last visited Mar. 28, 2018) (FINRA's "special submission agreement" for Investment Adviser Disputes). *See* **Ex. S**.

[8]     An associated person of a member is a person who is registered under the rules of FINRA. FINRA Rule 12100(b) and (u). *See infra* note 8.

FINRA Rule 12200[9] (emphasis added). Similarly, FINRA Rule 12201 provides parties *may* arbitrate only if:

- The parties agree in writing to submit the dispute to arbitration under the Code after the dispute arises; and
- The dispute is between a customer and a member, associated person of a member, or other related party; and
- The dispute arises in connection with the business activities of a member or an associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

FINRA Rule 12201 (emphasis added).

A customer is: "…one who, while not a broker dealer, either (1) purchases a good or service from a FINRA member, or (2) has an account with a FINRA member."

*Citigroup Glob. Markets Inc. v. Abbar*, 761 F.3d 268, 276 (2d Cir. 2014). In reaching this conclusion, the court stated:

> The purchase of a good or service from a FINRA member creates a customer relationship…. [W]hen it is clear that no goods or services were provided by the FINRA member, there is no need to grapple with the precise boundaries of the FINRA meaning of 'customer' because "no rational factfinder could infer a customer relationship on such facts.

*Id.* at 275 (citing *Wachovia Bank, Nat. Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011) (finding no customer relationship where the FINRA member did not provide brokerage services)).

Here, as repeatedly presented to the FINRA Panel, there is no pre-dispute agreement between the parties to arbitrate before FINRA. Watson is not a customer of FINRA member Allegis Services because he did not have an account with or purchase goods or services from

---

[9]    The FINRA Rules are available online on FINRA's website (www.FINRA.org). The FINRA Code of Arbitration Procedure for customer disputes is the 12000 series of the FINRA Rules.

Allegis Services. *See* **Ex. N**, Arb. Tr. 272:12-22 and 273:8-21[10]; Arb. Tr. 381:12 -382:8[11]; and

426:13-427:24[12].  Instead, he is a customer of TD Ameritrade. Watson's dispute does not arise in

connection with the business activities of Allegis Services. It arises from the activities of Allegis

Advisors. Finally, Allegis Advisors did not submit a post-dispute agreement to arbitrate, did not

submit the "special written submission agreement", and did not agree to pay FINRA fees.

## STANDARD OF REVIEW

"A party cannot be required to submit to arbitration any dispute which he has not agreed

to submit." *Bridgestone/Firestone, Inc. v. Local Union No. 998,* 4 F.3d 918, 921 (10th Cir.

1993). Section 10(a)(4) of the Federal Arbitration Act ("FAA") provides a court may vacate an

arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them

that a mutual, final, and definite award upon the subject matter submitted was not made."

9 U.S.C. §10(a)(4). The Tenth Circuit also recognizes several judicially created reasons for

which a district court may vacate including manifest disregard of the law, irrationality, and

violation of public policy. *Denver & Rio Grande W. R. Co. v. Union Pac. R. Co.*, 119 F.3d 847,

849 (10th Cir. 1997); *Abbott v. Law Office of Patrick J. Mulligan*, 440 F. App'x 612, 620 (10th

Cir. 2011). Under section 11 of the FAA, a court may modify or correct an award "where the

arbitrators have awarded upon a matter not submitted to them…." 9 U.S.C. §11(b). "Although

the factual findings of the arbitrator are insulated from judicial review, a district court ruling on a

---

[10]     Testimony of Brandon Stimpson.
[11]     Testimony of Heath Bowen. Mr. Bowen is a shareholder and member of Allegis Services.
*See* **Ex. N**, Arb. Tr. 351:1-6 and 354:12-14.
[12]     Testimony of Staci Compagno. Ms. Compagno is the Chief Compliance Officer for
Allegis Services. *See* **Ex. N**, Arb. Tr. 404:1-12.

motion to vacate may make its own factual findings regarding the reasons for which the motion should be denied or granted." *Denver & Rio Grande Western R. Co.*, 119 F.3d at 849.

## ARGUMENT

## I.    THE FINRA PANEL EXCEEDED ITS AUTHORITY.

Arbitrators exceed their authority if the award is without foundation in reason or fact. *Youngs v. Am. Nutrition, Inc.*, 537 F.3d 1135, 1141 (10th Cir. 2008). Arbitration is a matter of contract and therefore the powers of an arbitrator derive from the arbitration agreement between the parties. *See Bridgestone/Firestone, Inc.*, 4 F.3d at 921; *see also W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 765 (1983). "[I]f an arbitrator acts outside of the scope of his contractually delegated authority – issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract – [the court] may… overturn his determination." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) (citation omitted).

### A.  The FINRA Panel Exceeded its Authority by Failing to Dismiss Claims Subject to AAA Arbitration Agreements.

Watson contracted on two occasions to arbitrate disputes with Allegis Advisors before the AAA. The FINRA Panel acknowledged in its Award Watson's "causes of action relate[d] to [his] buying and selling of unspecified index put options tied to performance of the Russell 2000 Index[.]" This describes the strategy offered and managed by Allegis Advisors. The AAA agreements between Watson and Allegis Advisors govern Watson's dispute, and they do not give the FINRA Panel authority to decide Watson's dispute. The FINRA Panel, therefore, exceeded its authority by failing to dismiss Watson's claims and by entering an award.

**B. The FINRA Panel Exceeded its Authority by Exercising Jurisdiction over a Non-FINRA Member and its Representative.**

Respondents in their pleadings, motions, and arguments at hearing made the FINRA Panel aware that Allegis Advisors and Stimpson, in his capacity as an investment advisor representative, were not subject to FINRA jurisdiction and did not voluntarily agree to submit Watson's dispute to FINRA's dispute resolution forum.

As discussed above, FINRA has no jurisdiction over registered investment advisors or their investment advisor representatives absent voluntary consent and three conditions which were not met here. The FINRA Panel acknowledged, in the Award, that Allegis Advisors did not file a submission agreement. That means Allegis Advisors was not a party to this case and the Panel had no jurisdiction over it.  Even Watson did not contest this point. The FINRA Panel, however, stated Allegis Advisors "answered the Statement of Claim," suggesting the absence of a submission agreement was immaterial. Because Allegis Advisors was not a party, however, it did not file an Answer. Moreover, the Answer asserts repeatedly that FINRA lacks jurisdiction and cannot logically be interpreted as any agreement to submit to FINRA jurisdiction.

Further, the FINRA Panel ignored the fact that Stimpson did not submit to FINRA jurisdiction in his capacity as an investment advisor representative. The Panel did not explain how it had authority to render an award against him for his conduct as an investment advisor representative.

**C. The FINRA Panel Exceeded its Authority by Making a Legal Finding it Did Not Have Authority to Make and Was Not Asked to Make.**

Presumably acknowledging it had jurisdictional problems with this dispute, the FINRA Panel improperly found the business activities and identities of Allegis Advisors and Allegis

Services were "conflated." This conclusion has no legal basis. As demonstrated above, the only arbitration agreements here were the agreements to arbitrate before the AAA which did not give the FINRA Panel any authority, much less authority to decide whether these entities were "conflated." The FINRA Panel drew this conclusion in an improper attempt to pull Allegis Advisors under FINRA jurisdiction because the FINRA jurisdictional requirements under FINRA Rules 12200 and 12201 could not be met. It is outside the scope of authority granted by the AAA arbitration agreements for the FINRA Panel to draw any conclusions, legal or otherwise, regarding the entity structure of a non-FINRA member who did not submit to FINRA jurisdiction and was not a party to the case.[13] Further, it was undisputed that Allegis Advisors is not a FINRA member, not regulated by FINRA but instead regulated by the SEC,[14] and is an entirely separate entity from Allegis Services.

**D. The FINRA Panel Exceeded its Authority by Entering an Award Against Allegis Services and its Associated Person When Watson was Not Their Customer and Watson's Dispute Did Not Involve Them.**

FINRA Rules 12200 and 12201 provide for arbitration under the FINRA Code if the dispute is between a <u>customer</u> and a member or associated person of a member, and the dispute <u>arises in connection with the business activities of that member</u>. *See supra* FINRA Rule 12200 and 12201. A "customer" is one who purchases goods or services from or has an account with a FINRA member. *Citigroup Global Markets Inc.*, 761 F.3d at 276.

---

[13]     If Allegis Investment Advisors, LLC had submitted to FINRA arbitration, and if the issue of whether Allegis Investment Advisors, LLC and Allegis Investment Services, LLC were "conflated" entities had been submitted to arbitration, evidence would have been presented about the different ownership of the entities, the reporting obligations of each entity to their different regulators, the filing of separate tax returns by the entities, and other evidence showing these are legally separate and distinct entities.

[14]     *See supra* note 6.

The FINRA Panel exceeded its authority in entering an Award against Allegis Services and its associated person, Mr. Stimpson, because FINRA Rules 12200 and 12201 are not met. Watson was not a customer of FINRA member Allegis Services, did not purchase goods or services from Allegis Services, and did not have an account with Allegis Services. Watson's account was at broker dealer TD Ameritrade and managed by Allegis Advisors. Watson's dispute also did not arise in connection with the business activities of FINRA member Allegis Services.

## II.    THE FINRA PANEL'S AWARD IS "IRRATIONAL."

"Irrationality" as a basis for vacatur refers to when the arbitrator "disregarded the terms of the contract." *Abbott*, 440 F. App'x at 622 (citing *Jenkins v. Prudential-Bache Sec., Inc.*, 847 F.2d 631, 634 (10th Cir. 1988)). The test is "to ensure that the arbitrator's decision relies on his interpretation of the contract as contrasted with his own beliefs of fairness and justice." *Id.* The court must determine "whether the arbitrator's award draws its essence from the contract of the parties." *Jenkins*, 847 F.2d at 634 (citation omitted).

As quoted above, the agreements to arbitrate before the AAA clearly state disputes arising out of Allegis Advisors' services are to be arbitrated before the AAA. The FINRA Panel's Award fails the "Irrationality" test because the Panel's assertion of jurisdiction and determination of liability against non-FINRA members is contrary to the parties' agreement to arbitrate before the AAA.  Watson and Allegis Services never entered into a contract that would permit a FINRA arbitration to proceed. They agreed to AAA arbitration.  Additionally, the FINRA Panel ignored on-point persuasive precedent of another FINRA award in an identical dispute where that FINRA panel dismissed the investors' claims because it lacked jurisdiction

over the dispute. This again indicates the FINRA Panel's award here was based on its own beliefs of fairness and justice rather than the valid AAA arbitration agreements or the scope of the FINRA submission.

### III.   THE FINRA PANEL MANIFESTLY DISREGARDED THE LAW BY FAILING TO FOLLOW FINRA RULES 12200 and 12201 AND *CITIGROUP V. ABBAR*.

Manifest disregard of the law "requires a finding that the panel's decision exhibits willful inattentiveness to the governing law" meaning the "arbitrators knew the law and explicitly disregarded it." *Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1275 (10th Cir. 2005) (citation omitted).

Respondents in their pleadings, motions, and arguments at hearing made the FINRA Panel aware of the law pertaining to FINRA jurisdiction but the FINRA Panel explicitly ignored it in entering its Award against Allegis Services and its associated person, Mr. Stimpson. As argued to the FINRA Panel, FINRA Rules 12200 and 12201 provide for arbitration under the FINRA Code if the dispute is between a customer and a member or associated person of a member, and the dispute arises in connection with the business activities of that member. *See supra* FINRA Rule 12200 and 12201. A "customer" is one who purchases goods or services from or has an account with a FINRA member. *Citigroup Global Markets Inc.*, 761 F.3d at 276.

As Respondents repeatedly presented to the FINRA Panel, the requirements of FINRA 12200 and 12201 are not met here. Watson was not a customer of FINRA member Allegis Services, did not purchase goods or services from Allegis Services, and did not have an account with Allegis Services. Watson's account was at broker dealer TD Ameritrade and managed by Allegis Advisors. Watson's dispute did not arise in connection with the business activities of FINRA member Allegis Services.

The requirements of FINRA 12200 and 12201 were presented to and ignored by the Panel. Rather, the FINRA Panel improperly found Allegis Advisors and Allegis Services were "conflated" to intentionally circumvent FINRA Rules 12200 and 12201 and take advantage of the fact that Watson was a client of non-FINRA member Allegis Advisors. This is improper and in manifest disregard of the law, specifically, FINRA Rules 12200 and 12201 which govern FINRA's jurisdiction and are not satisfied here.

IV.   **THE FINRA PANEL VIOLATED PUBLIC POLICY BY IGNORING VALID ARBITRATION AGREEMENTS AND EXERCISING JURISDICTION WHEN IT HAD NONE.**

When "the contract as interpreted [by the arbitrator] would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents[,]" a court may vacate the arbitration award. *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1151 (10th Cir. 2007) (citation omitted). Specifically, the United States Supreme Court recognizes the public policy of favoring enforcement of private arbitration agreements on equal footing as other contracts and not requiring parties to arbitrate when they have not agreed to do so. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002). A party cannot be bound to an arbitration award when it did not agree to arbitration. *Bridgestone/Firestone, Inc.*, 4 F.3d at 921.

Here, the FINRA Panel ignored valid arbitration agreements requiring arbitration before the AAA and improperly exercised jurisdiction over a non-FINRA member in a dispute involving activities of a non-FINRA member. The FINRA Panel's refusal to give deference or effect to the AAA agreements demonstrates a blatant violation of the well-established public policy favoring enforcement of voluntary arbitration agreements.

14

**V.   THE FINRA PANEL IMPROPERLY MADE AN AWARD ON A MATTER NOT SUBMITTED TO IT BY FINDING ALLEGIS ADVISORS AND ALLEGIS SERVICES ARE "CONFLATED."**

A court may modify an arbitration award when "the arbitrators awarded upon a matter not submitted to them." *Thomason v. Citigroup Glob. Markets Inc.*, No. 2:05-CV-00883 PGC, 2006 WL 149046, at *3 (D. Utah Jan. 18, 2006) (unpublished); 9 U.S.C. §11(b). As discussed above, the Panel determined Allegis Advisors and Allegis Services were "conflated" which, in essence, is a legal conclusion that the entities are alter egos. Watson did not claim or seek a finding that Allegis Services and Allegis Advisors were alter egos and this issue was never submitted to the FINRA Panel.[15]  As such, the award must be set aside.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request the Court to vacate the FINRA Award or in the alternative, modify the FINRA award to remove the Panel's conflated identities liability finding and determine if the Award can still stand without such finding.

---

[15]     *See supra* note 10.

DATED this 5th day of April, 2018.

WOOD BALMFORTH LLC


/s/ Mary Anne Q. Wood
Mary Anne Q. Wood
60 East South Temple Street, Suite 500
Salt Lake City, Utah 84111
Telephone: (801) 366-6060
mawood@woodbalmforth.com


GORDON REES SCULLY MANSUKHANI


/s/ Tamara A. Seelman
Tamara A. Seelman
555 Seventeenth Street, Suite 3400
Denver, Colorado 80202
Telephone: (303) 534-5160
tseelman@grsm.com
*Pro Hac Vice* Application Pending

*Attorneys for Plaintiffs*

16

**PLAINTIFFS' MOTION TO VACATE OR MODIFY ARBITRATION AWARD**
**INDEX OF EXHIBITS**

| Ex. No. | Description | Hearing Exhibit No. |
|---------|-------------|---------------------|
| Ex. A | Discretionary Advisory Contract - November 2013 | R-1 |
| Ex. B | Discretionary Advisory Agreement - January 2015 | R-11 |
| Ex. C | TD Ameritrade Limited Power of Attorney | R-14 |
| Ex. D | TD Ameritrade Client Options Account Agreement | R-13A |
| Ex. E | TD Ameritrade Welcome Letter & Account Suitability Profile | R-13C |
| Ex. F | TD Ameritrade Account Statements – August 2015 | R-19 |
| Ex. G | TD Ameritrade Trade Confirmations –August 2015 | R-20 |
| Ex. H | Watson Statement of Claim in FINRA (Exhibits Omitted) | |
| Ex. I | Allegis Services FINRA Submission Agreement | |
| Ex. J | Brandon Stimpson FINRA Submission Agreement | |
| Ex. K | Answer to Watson's Statement of Claim in FINRA (Exhibits Omitted) | |
| Ex. L | Award in the FINRA Hansen Matter | R-44 |
| Ex. M | Written Motion to Dismiss (Exhibits Omitted) | |
| Ex. N | FINRA Arbitration Hearing Transcript | |
| Ex. O | FINRA Panel's Order Denying the written Motion to Dismiss | |
| Ex. P | Award in the FINRA Watson Matter | |
| Ex. Q | PDF Printout of the FINRA description of Investment Advisers | |
| Ex. R | PDF Printout of the FINRA Guidance on Disputes with Investment Advisers | |
| Ex. S | PDF Printout of the FINRA Special Written Submission Agreement for Investment Advisers | |
| Ex. T | FINRA Regulatory Notice 09-07 | |